## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SABRIA BUSHONG<br>330 M Street SW<br>Washington, D.C. 20024<br><br>      Plaintiff,<br><br>v.<br><br>CHIEF EXECUTIVES ORGANIZATION<br>1825 K Street NW, Suite 1450<br>Washington, D.C. 20006<br><br>MARIA SHEFFLER<br>7301 Welsh Ct.<br>Middletown, MD 21769<br><br>FRANCIS SHAFER<br>200 Vassar Pl.<br>Alexandria, VA 22314<br><br>JENNIFER LEHMANN WENG<br>5053 Massachusetts Ave., NW<br>Washington, DC 20016<br><br>      Defendants. | Civil Action No. 1:24-cv-01633<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Sabria Bushong (nee Farhat) ("Plaintiff" or "Ms. Farhat"), brings this action

against Chief Executives Organization ("CEO"), Maria Sheffler, Francis Shafer, and Jennifer

Lehmann Weng (collectively "Defendants") to seek redress for violations of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"); the Pregnancy Discrimination

Act, 42 U.S.C.S. § 2000(e) *et. seq.* ("PDA"); the D.C. Human Rights Act, D.C. Code § 2-

1402.11(a)(1) *et seq.* ("DCHRA"); the D.C. Family and Medical Leave Act, D.C. Code § 32-

1

503(a) *et seq.* ("DCFMLA"); and the Protecting Pregnant Workers Fairness Act of 2014, D.C. Code § 32-1231 ("PPWFA"). Defendants terminated Ms. Farhat just two days after she raised concerns about discrimination and Defendants stated the reason for her termination was because she took leave and required accommodations related to pregnancy, childbirth, and familial responsibilities.

## JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction over Counts III, IV, and V of this Complaint pursuant to 28 U.S.C. § 1331, as these claims arise under the laws of the United States.

2.     Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Counts I, II, VI, VII, and VIII of this Complaint, which arise under the laws of the District of Columbia.

3.     This Court has personal jurisdiction over Defendants because Defendants have substantial, continuous, and systematic contacts within the District of Columbia and Defendant's acts and omissions, as alleged herein, occurred in the District of Columbia.

4.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) because Defendant's conduct business in the District of Columbia and a substantial part of the acts or omissions giving rise to the claims asserted herein occurred in the District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      On May 19, 2023, Ms. Farhat filed a Charge of Discrimination ("Initial Charge")

with the EEOC, EEOC Charge No. 570-2023-02602, and cross-filed her charge

with the District of Columbia Office of Human Rights ("DCOHR").

6.      On April 16, 2024, the EEOC issued Plaintiff a Notice of Right to Sue.

7.      Fewer than 90 days have passed since the issuance of the Notice of Right to Sue.

## PARTIES

8.      Ms. Farhat is an adult resident of Washington, DC.

9.      Ms. Farhat worked for Defendant CEO from April 2020 until she was terminated

on November 21, 2022.

10.     Ms. Farhat was employed by Defendant CEO for at least 12 months prior to

requesting family and medical leave.

11.     Ms. Farhat worked at least 1,000 hours during the year immediately preceding her

request for family and medical leave.

12.     At all times relevant to this Complaint, Ms. Farhat was an employee of Defendant

CEO within the meaning of Title VII, the DCHRA, DCFMLA, and PPWFA.

13.     At all times relevant to this Complaint, Ms. Farhat was an eligible employee

under the DC FMLA.

14.     Defendant CEO is headquartered in Washington, DC and is organized under the

laws of the District of Columbia.

15.     Defendant CEO does business in the District of Columbia.

16.     At all times relevant to this Complaint, Defendant CEO was engaged in

commerce or in an industry or activity affecting commerce.

17. At all times relevant to this Complaint, Defendant CEO employed 20 or more employees who work in the District of Columbia.

18. At all times relevant to this Complaint, Defendant CEO used the services of another individual for pay in the District of Columbia.

19. At all times relevant to this Complaint, Defendant CEO was Plaintiff's employer within the meaning of Title VII, the PDA, DCHRA, DCFMLA, and PPWFA. At all times relevant to this Complaint, Defendant CEO was a covered entity under and the DCHRA.

20. Defendant Maria Sheffler is an individual adult resident of Maryland.

21. Defendant Maria Sheffler is named individually pursuant to DCHRA, D.C. Code § 2-1402.11(a)(1) *et seq.*, DC FMLA, D.C. Code § 32-503(a*) et seq.*; and the PPDWA, D.C. Code § 32-1231 *et seq.*  At all times relevant, Ms. Sheffler was employed by Defendant CEO, worked at its location in Washington, D.C., and was acting in the interest of CEO.

22. Defendant Francis Shafer is an individual adult resident of Virginia.

23. Defendant Francis Shafer is named individually pursuant to DCHRA, D.C. Code § 2-1402.11(a)(1) *et seq.*, DC FMLA, D.C. Code § 32-503(a*) et seq.*; and the PPDWA, D.C. Code § 32-1231 *et seq.* At all times relevant, Mr. Shafer was employed by Defendant CEO, worked at its location in Washington, D.C., and was acting in the interest of CEO.

24. Defendant Jennifer Lehmann Weng is an individual adult resident of Washington, D.C.

25.   Defendant Jennifer Lehmann Weng is named individually pursuant to DCHRA, D.C. Code § 2-1402.11(a)(1) *et seq.*, DC FMLA, D.C. Code § 32-503(a) *et seq.*; and the PPDWA, D.C. Code § 32-1231 *et seq*. At all times relevant, Ms. Weng was employed by Defendant CEO, worked at its location in Washington, D.C., and was acting in the interest of CEO.

## <u>FACTS</u>

26.   Ms. Farhat began her employment with Defendant CEO in April 2020 as an Associate Director.

27.   At all times relevant to this Complaint, Maria Sheffler, Director of Membership, was Ms. Farhat's first-level supervisor.

28.   Defendant CEO is an organization comprised of business leaders and designed to provide members with "opportunities for networking and global education experiences."

29.   In her position, Ms. Farhat implemented recruitment initiatives, strategized about membership retention, oversaw the administrative aspects of the membership application, and coordinated the membership initiation process.

30.   Ms. Farhat began her employment in the midst of the COVID-19 pandemic and her position was entirely remote for approximately one year of her employment.

31.   Ms. Farhat was able to successfully and effectively perform all of her duties remotely, and she quickly excelled in her position.

32.   Throughout Ms. Farhat's tenure with CEO, CEO leadership, including Ms. Scheffler, frequently praised her, both formally and informally, for her

outstanding performance and ability to foster excellent relationships with both her colleagues and CEO's members.

33.   For example, in Ms. Farhat's 2021 review, Ms. Sheffler wrote that Ms. Farhat had "been able to develop key initiatives" and that Ms. Farhat was "constantly innovating the Membership Department."  Ms. Sheffler further complimented Ms. Farhat for being "thoughtful in her processes and how she structures initiatives."

34.   CEO recognized Ms. Farhat's positive performance by awarding her raises and annual bonuses.

35.   CEO members and Ms. Farhat's colleagues were equally effusive.  In an internal database maintained by CEO, and in which employees could record feedback, her colleagues consistently left positive feedback.  For example, colleagues referred to her as an "asset" and said she was "valuable" to the team.

36.    Throughout her employment with Defendant CEO, Ms. Farhat accomplished many significant achievements, including consistently exceeding membership recruitment goals and created two new successful programs for members to differentiate CEO from its competitors.

37.   In or around October 2021, Ms. Farhat notified Ms. Sheffler that she was pregnant.

38.   In or around April 2022, following the birth of her daughter, Ms. Farhat took leave.

39.   In the midst of Ms. Farhat's maternity leave, in or around June 2022, Ms. Sheffler contacted Ms. Farhat and requested that Ms. Farhat confirm that she would attend the CEO board meeting scheduled to take place in Italy in November 2022,

approximately three months after Ms. Farhat's expected return to work and approximately six months after the birth of her child.

40. Ms. Farhat responded that she did not think that she would be able to attend the board meeting, given the distance and travel requirements, as she anticipated that she would be breastfeeding her newborn at that time. Ms. Farhat added that she would be amenable to traveling to Italy for the meeting if her breastfeeding plans changed and asked if they could "revisit" at a later date.

41. However, Ms. Sheffler required Ms. Farhat to give a definitive answer the same week while Ms. Farhat was on maternity leave and while Ms. Farhat's breastfeeding needs remained unknown.

42. On or around August 1, 2022, Ms. Farhat returned to work after using fifteen weeks of leave. Prior to going on leave, Ms. Farhat pre-arranged to work remotely for the month of August and transition to three days a week in the office beginning in September 2022. Ms. Farhat requested to work remotely for a month following her maternity leave in order to continue to care for her newborn, including continued efforts to breastfeed her baby on a regular basis as her newborn still required frequent feedings.

43. At the end of August 2022, Ms. Farhat, her husband, and her newborn contracted COVID. Ms. Farhat's four-month-old baby experienced severe symptoms that lasted for an extended period, during which time she used her remaining leave under the DCFMLA.

44.   After taking leave, Ms. Farhat requested to work remotely while she was still testing positive for COVID and while she was caring for her newborn who was still experiencing COVID symptoms.

45.   Following Ms. Farhat's return from maternity leave and related occasional requests for a flexible schedule on an as needed basis, Ms. Sheffler's demeanor towards Ms. Farhat drastically shifted.

46.   Upon Ms. Farhat's in-person return to the office at the beginning of September 2022, Ms. Sheffler met with her and reprimanded her for her attendance.  In the same meeting, Ms. Sheffler also commented that she was disappointed that Ms. Farhat would not be going to the November board meeting in Italy.

47.   Ms. Sheffler subsequently began giving Ms. Farhat tasks that were outside of her job description and with which Ms. Farhat had no experience.  Ms. Sheffler refused to provide her with guidance on completing such assignments.  Ms. Sheffler also began avoiding Ms. Farhat, including refusing to meet with her as frequently as she had previously and failing to reply to her emails.  When she did meet with Ms. Farhat, Ms. Sheffler's tone was terse, and she made demeaning comments about Ms. Farhat.

48.   Between September 2022 and November 2022, Ms. Farhat occasionally requested to change her schedule or take leave to care for her children because they experienced illness or injury.  Ms. Farhat notified Ms. Sheffler in advance of any schedule changes and offered to provide medical documentation to support her requests although CEO never requested such documentation.

49.     During these months, Ms. Farhat's newborn daughter experienced long-term COVID symptoms, including lasting chest congestion and cough, as well as frequent high fevers.

50.     In fact, in the months following the COVID diagnosis, the symptoms were so severe that her doctors prescribed the regular use of albuterol, which was administered through a nebulizer, to assist Ms. Farhat's newborn in opening her lungs and breathing.

51.     When her daughter suffered a flare-up of severe congestion or high fever, Ms. Farhat requested leave or to work from home to care for her baby.

52.     On other occasions, due to her caregiving responsibilities, Ms. Farhat requested flexibility in the hours she was at work or modification of her schedule, such as arriving late and working late.

53.     For example, on or around November 10, 2022, Ms. Farhat requested to work from home because her older daughter had suffered a concussion on the playground at school.

54.     Similarly, during the week of November 14, 2022, Ms. Farhat requested to arrive late one day in order to take her baby to her scheduled six-month doctor's appointment and to get her COVID vaccine.

55.     Again, on November 15, 2022, Ms. Farhat requested a day of leave because her older daughter was diagnosed with conjunctivitis and not permitted to attend daycare until she began antibiotics.

56.     Despite her caregiving obligations, Ms. Farhat ensured that her familial responsibilities and need for leave did not interfere with her job performance.  In

order to ensure she produced the highest quality work product, Ms. Farhat often worked late hours or outside of normal business hours, working the same hours, or more, than she had worked prior to maternity leave with the knowledge and consent of her employer.

57. Ms. Farhat's colleagues and supervisors continued to record their appreciation and gratitude for Ms. Farhat's work upon her return from maternity leave. For example, on August 29, 2022, one colleague wrote that Ms. Farhat's "positivity is infections and I love working with her". She further noted that Ms. Farhat's "strategic vision for CEO programs. . . are so valuable".

58. On September 1, 2022, another colleague wrote that Ms. Farhat deserved a "gold star" for her assistance on a project.

59. On September 27, 2022, Ms. Sheffler wrote that Ms. Farhat "did a terrific job" on a task.

60. On September 28, 2022, yet another colleague wrote that Ms. Farhat gave a "[g]reat and informative Powerpoint/presentation" at a staff meeting.

61. In recognition of her value and her success in growing membership, in October 2022, Ms. Jennifer Weng, Executive Director, requested Ms. Farhat give a company-wide presentation on hospitality, entitled "Enlightened Hospitality", which was designed to train employees on best practices for interacting with members.

62. Following the presentation, both Ms. Sheffler and Francis Shafer, Chief Financial Officer, complimented Ms. Farhat on the presentation. Ms. Sheffler wrote that Ms. Farhat "did a fantastic job leading the Enlightened Hospitality training". Mr.

10

Sheffler similarly described Ms. Farhat's training as "fantastic" and explained that she "facilitated the discussion like a professional, covering meaningful topics."

63.   That her performance continued to exceed expectations after her return from parental leave was reflected in her October 2022 performance review. In Ms. Farhat's October 2022 review, Ms. Sheffler wrote that Ms. Farhat had "played a key role" in a "tremendous year." Ms. Sheffler concluded, Ms. Farhat "is an asset to CEO!"

64.   In her October 2022 review, Ms. Farhat consistently received high scores in every element.  The review did not raise any performance concerns.

65.   On or around Thursday, November 17, 2022, Ms. Farhat wrote to Ms. Sheffler and requested a meeting explaining that she felt Ms. Sheffler had "treated [her] different since [she] [] returned from maternity leave."  Ms. Farhat explicitly mentioned that Ms. Sheffler's interactions with her were a "departure from how [Ms. Sheffler] used to interact with [Ms. Farhat] before [her] maternity leave."  In her email requesting the meeting, Ms. Farhat also noted her concern that Ms. Sheffler expressed disappointment that Ms. Farhat could not attend the board meeting in Italy because of her anticipated breastfeeding needs.

66.   On Friday, November 18, 2022, Ms. Sheffler responded non-substantively and scheduled an in-person meeting to take place on Monday, November 21, 2022.

67.   Ms. Farhat understood the purpose of the meeting was to discuss the concerns she had raised about the negative change in treatment she experienced upon her return from maternity leave.

68.   On November 21, 2022, when Ms. Farhat arrived at the meeting, she was surprised to find that, in addition to Ms. Sheffler, the Chief Financial Officer, Mr. Francis Shafer, was also present.  Instead of discussing the concerns raised in her November 17, 2022 email, Mr. Shafer and Ms. Sheffler notified Ms. Farhat that she was being terminated effective immediately.

69.   At the meeting, Ms. Farhat was given a letter of termination signed by Ms. Weng. The letter simply stated that she was being terminated due to "performance" but failed to identify any specific performance issues.

70.   Ms. Sheffler verbally elaborated on the reason for the termination, including Ms. Farhat's multiple requests for changes to her schedule.  Ms. Sheffler also alluded to her belief that Ms. Farhat should have attended the board meeting in Italy and questioned the veracity of Ms. Farhat's breastfeeding decisions.

71.   Ms. Farhat's termination was effective the same day.  She was not permitted to assist with transitioning her duties and responsibilities or to provide training to individuals on ongoing projects that she was leading.

72.   Following her termination, colleagues and board members expressed shock and confusion about her termination because they were aware of her outstanding performance and invaluable contributions.

73.   One board member wrote a praiseful letter of recommendation, expressing that he had the "highest regard for her" and describing her "incredible work ethic, astute diplomatic skills, intelligence and ability to think out of the box."  The board member continued that Ms. Farhat "has the grace and finesse not only to get the job done but gain the respect of those she works with in the process."

74.    Following her termination, Ms. Sheffler encouraged Ms. Farhat's colleagues not to socialize with Ms. Farhat explicitly because Ms. Farhat had reported CEO's discriminatory and retaliatory actions and warned potential witnesses not to provide any information that would assist Ms. Farhat in pursuing her claims of discrimination and retaliation.

75.    As a result of Defendants' actions, Ms. Farhat has suffered significant economic harm in the form of lost wages, bonuses and other compensation, as well as emotional harm, including mental anguish, anxiety, stress, humiliation, damage to her professional reputation, and loss of enjoyment of work and life.

## COUNT I: Violation of the D.C. Family and Medical Leave Act (retaliation) against all Defendants

76.    Ms. Farhat re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the DCFMLA.

77.    At all times relevant to her Complaint, Ms. Farhat was eligible for medical leave under the DCFMLA.

78.    At all times relevant to this Complaint, Defendants were employers of Ms. Farhat under the DCFMLA.

79.    Ms. Farhat was entitled to take sixteen weeks of continuous or intermittent protected family and medical leave in a twenty-four-month period because of the birth of her child.

80.    Ms. Farhat gave birth to her daughter in April 2022 and thereafter took pre-approved intermittent DCFMLA. On or around August 1, 2022, Ms. Farhat returned to work after using fifteen weeks of leave.

81.   It was an unlawful employment practice for Defendants to discriminate or retaliate against Ms. Farhat because she exercised her rights under the DCFMLA.

82.   Defendants retaliated against Ms. Farhat when it terminated Ms. Farhat because Ms. Farhat exercised or attempted to exercise her right to take DCFMLA leave.

83.   As a direct and proximate result of the acts and omissions described above, Ms. Farhat suffered further adverse actions from Defendants, including lost compensation and benefits resulting from her termination.

84.   Defendants are unable to show that the acts did not occur in good faith or that Defendants had reasonable grounds to believe that its acts and omissions were not in violation of the DCFMLA.

85.   Under the DCFMLA, Ms. Farhat is entitled to all wages, salary, employment benefits, or other compensation denied or lost to her due to the DCFMLA violation, interest on the amount calculated at the prescribed rate, consequential damages not to exceed an amount equal to three times the amount of lost compensation and interest, medical expenses not covered by the employee's health insurance, and attorney's fees and costs.

**COUNT II: Violation of the Protecting Pregnant Workers Fairness Act
(retaliation/reasonable accommodation) against all Defendants**

86.   Ms. Farhat re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

87.   At all times relevant to this Complaint, Ms. Farhat was an employee of Defendants under the PPWFA.

88.   At all times relevant to this Complaint, Defendants were Ms. Farhat's employer under the PPWFA.

89.     Between April 2022 and November 2022, Ms. Farhat's ability to perform the functions of her position was affected by her pregnancy and the birth of her child.

90.     Ms. Farhat engaged in protected activity as she requested leave and travel limitations as reasonable accommodations due to post-birth complications, to recover from childbirth, and because she was breastfeeding her newborn baby.

91.     Defendants subjected Ms. Farhat to an adverse employment action when Defendants terminated her employment because she requested and/or used a reasonable accommodation, in violation of the PPWFA.

92.     As a direct and proximate result of the acts and omissions described above, Ms. Farhat suffered substantial financial harm, including lost compensation and benefits resulting from her termination, as well as emotional harm, including mental anguish, anxiety, stress, humiliation, damage to her professional reputation, and loss of enjoyment of work and life.

93.     Defendants' actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights and were motivated by evil intent.

**COUNT III:  Violation of the Pregnancy Discrimination Act of Title VII (discrimination on the basis of pregnancy) against Defendant CEO**

94.     Ms. Farhat re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the PDA.

95.     At all times relevant to this Complaint, Ms. Farhat was an employee of Defendant under PDA.

96.     At all times relevant to this Complaint, Ms. Farhat was a woman affected by pregnancy, childbirth, or related medical conditions, a class protected by the provisions of the PDA.

97.     At all times relevant to this Complaint, Defendant was Ms. Farhat's employer under the PDA.

98.     Defendant was aware that Ms. Farhat was a woman affected by pregnancy, childbirth, or a related medical condition.

99.     Defendant treated her less favorably than other employees not affected by pregnancy, childbirth, or related medical conditions.

100.    Defendant subjected Ms. Farhat to an adverse employment action when Defendant terminated Ms. Farhat because she was a woman affected by pregnancy and childbirth.

101.    As a direct and proximate result of the acts and omissions described above, Ms. Farhat suffered substantial financial harm, including lost compensation and benefits resulting from her termination, as well as emotional harm, including mental anguish, anxiety, stress, humiliation, damage to her professional reputation, and loss of enjoyment of work and life.

102.    Defendant's actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights and were motivated by evil intent.

103.    legal rights and were motivated by evil intent.

**COUNT IV: Violation of Title VII (discrimination on the basis of sex) against Defendant CEO**

104.    Ms. Farhat re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under Title VII.

105.    At all times relevant to this Complaint, Ms. Farhat was an employee of Defendant CEO under Title VII.

106.   At all times relevant to this Complaint Ms. Farhat was a woman, a class protected by the provisions of the PDA of Title VII.

107.   Defendant CEO was aware of Ms. Farhat's sex.

108.   Defendant CEO treated her less favorably than male employees.

109.   Defendant CEO subjected Ms. Farhat to an adverse employment action when Defendant CEO terminated Ms. Farhat because of her sex and sex-based characteristics, including being a mother and having children.

110.   As a direct and proximate result of the acts and omissions described above, Ms. Farhat suffered substantial financial harm, including lost compensation and benefits resulting from her termination, as well as emotional harm, including mental anguish, anxiety, stress, humiliation, damage to her professional reputation, and loss of enjoyment of work and life.

111.   Defendant CEO's actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights and were motivated by evil intent.

**COUNT V: Violation of Title VII (retaliation) against Defendant CEO**

112.   Ms. Farhat re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims.

113.   At all times relevant to this Complaint, Ms. Farhat was an employee of Defendant CEO under Title VII.

114.   At all times relevant to this Complaint, Defendant CEO was Ms. Farhat's employer under Title VII.

115.   On November 17, 2022, Ms. Farhat a engaged in protected activity pursuant to the opposition clause of Title VII when she complained of unlawful discrimination

against her and expressed her concern that Ms. Sheffler "treated [Ms. Farhat] different since [she] [] returned from maternity leave."

116. Defendant CEO subjected Ms. Farhat to an adverse employment action when it terminated Ms. Farhat on November 21, 2022, at the meeting that Ms. Farhat requested with Ms. Sheffler to discuss Ms. Farhat's concerns of discrimination.

117. Defendant CEO treated Ms. Farhat less favorably than other employees who had not engaged in protected activity.

118. As a direct and proximate result of the acts and omissions described above, Ms. Farhat suffered substantial financial harm, including lost compensation and benefits resulting from her termination, as well as emotional harm, including mental anguish, anxiety, stress, humiliation, damage to her professional reputation, and loss of enjoyment of work and life.

119. Defendant CEO's actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights and were motivated by evil intent.

**COUNT VI: Violation of the D.C. Human Rights Act (discrimination on the basis of sex/pregnancy) against all Defendants**

120. Ms. Farhat re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims.

121. At all times relevant to this Complaint, Ms. Farhat was an employee of Defendants under the DCHRA.

122. At all times relevant to this Complaint, Defendants were Ms. Farhat's employers under the DCHRA.

123. At all times relevant to this Complaint, Ms. Farhat was a woman affected by pregnancy, childbirth, or related medical conditions, a class protected by the provisions of the DCHRA.

124. Defendants were aware that Ms. Farhat was a woman affected by pregnancy, childbirth, or a related medical condition.

125. Defendants treated Ms. Farhat less favorably than other employees not affected by pregnancy, childbirth, or related medical conditions.

126. Defendants subjected Ms. Farhat to an adverse employment action when Defendants terminated Ms. Farhat because she was a woman affected by pregnancy and childbirth.

127. As a direct and proximate result of the acts and omissions described above, Ms. Farhat suffered substantial financial harm, including lost compensation and benefits resulting from her termination, as well as emotional harm, including mental anguish, anxiety, stress, humiliation, damage to her professional reputation, and loss of enjoyment of work and life.

128. Defendants' actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights and were motivated by evil intent.

**COUNT VII: Violation of the D.C. Human Rights Act (discrimination basis of family responsibility) against all Defendants**

129. Ms. Farhat re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims.

130. At all times relevant to this Complaint, Ms. Farhat was an employee of Defendants under the DCHRA.

131. At all times relevant to this Complaint, Defendants were Ms. Farhat's employer under the DCHRA.

132. At all times relevant to this Complaint, Ms. Farhat was the primary contributor to the support and care of her newborn daughter, who has a dependent relationship with Ms. Farhat.

133. Defendants were aware that Ms. Farhat's requests for a modified schedule, occasional leave, and travel restrictions were directly related to her familial responsibilities.

134. Defendants treated Ms. Farhat less favorably than other employees not affected by familial responsibilities.

135. Defendants subjected Ms. Farhat to an adverse employment action when it terminated Ms. Farhat because of her familial responsibilities.

136. As a direct and proximate result of the acts and omissions described above, Ms. Farhat suffered substantial financial harm, including lost compensation and benefits resulting from her termination, as well as emotional harm, including mental anguish, anxiety, stress, humiliation, damage to her professional reputation, and loss of enjoyment of work and life.

137. Defendants' actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights and were motivated by evil intent.

**COUNT VIII: Violation of the D.C. Human Rights Act (retaliation) against all Defendants**

138. Ms. Farhat re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims.

139.   At all times relevant to this Complaint, Ms. Farhat was an employee of Defendants under the DCHRA.

140.   At all times relevant to this Complaint, Defendants were Ms. Farhat's employer under the DCHRA.

141.   On November 17, 2022, Ms. Farhat again engaged in protected activity pursuant to the DCHRA when she complained of unlawful discrimination against her and expressed her concern that Ms. Sheffler "treated [Ms. Farhat] different since [she] [] returned from maternity leave."

142.   Defendants subjected Ms. Farhat to an adverse employment action when Defendants terminated Ms. Farhat on November 21, 2022 at the meeting that Ms. Farhat requested with Ms. Sheffler to discuss Ms. Farhat's concerns of discrimination.

143.   Defendants treated Ms. Farhat less favorably than other employees who had not engaged in protected activity.

144.   As a direct and proximate result of the acts and omissions described above, Ms. Farhat suffered substantial financial harm, including lost compensation and benefits resulting from her termination, as well as emotional harm, including mental anguish, anxiety, stress, humiliation, damage to her professional reputation, and loss of enjoyment of work and life.

145.   Defendants' actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights and were motivated by evil intent.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Farhat respectfully requests the following relief:

A. Reinstatement or front pay if reinstatement is not granted;

B. Injunctive relief and declare that Defendants' acts or omissions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Pregnancy Discrimination Act, 42 U.S.C. § 2000e et seq.; the D.C. Human Rights Act, D.C. Code § 2- 1401.01 et seq.; the D.C. Family and Medical Leave Act, D.C. Code § 32-501 et seq.; and the Protecting Pregnant Workers Fairness Act of 2014, D.C. Code § 32-1231.01 et seq.;

C. Enter an award of compensatory damages in an amount to be determined at trial;

D. Enter an award of punitive damages in an amount to be determined at trial;

E. Enter an award of back pay in the amount of any wages, employment benefits, or other lost compensation;

F. Enter an award of consequential damages equal to three times the amount of total lost compensation and interest owed to Plaintiff;

G. Order Defendants to pay the appropriate civil penalty pursuant to D.C. Code § 32-1231.11;

H. Enter an award of reasonable litigation costs, expert fees, and attorneys' fees; and,

I. That the Court grant any other such relief the Court may deem just and equitable, and as the nature of this case may require.

## **JURY TRIAL DEMANDED**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules of this Court, Plaintiff demands a jury trial for this action.

Date: June 3rd, 2024

Respectfully submitted,

*/s/ Maya Jefferson*
Maya P. Jefferson, Esq.
Gary Gilbert, Esq.
*Counsel for Plaintiff*
Gilbert Employment Law, P.C.
8403 Colesville Road, Suite 1000
Silver Spring, MD 20910
MJefferson-Efile@gelawyer.com
Gary-Efile@gelawyer.com